IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN LAWRENCE, *individually and on behalf of similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>SUN ENERGY SERVICES LLC *d/b/a* DEEP WELL SERVICES,<br><br>Defendant. | 2:23-CV-02155-CCW |

## **OPINION**

Before the Court is Plaintiff's Motion for Final Certification of a Fair Labor Standards Act Collective and for Class Certification under Federal Rule of Civil Procedure 23(b)(3). ECF No. 86. For the following reasons, the Court will GRANT the Motion in part and DENY the Motion in part.

## I.    Background

Named Plaintiff Justin Lawrence initiated this case as a hybrid class and collective action, asserting claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA") and the New Mexico Minimum Wage Act, N.M. Stat. § 50-4-19 ("NMMWA"). ECF Nos. 1, 19.[1]  The claims arise out of Mr. Lawrence's employment with Defendant Sun Energy Services LLC, *d/b/a* Deep Well Services ("Deep Well") and Deep Well's alleged failure to pay overtime wages required by the FLSA and the NMMWA. Mr. Lawrence alleges that Deep Well has uniformly applied three unlawful pay practices wherein:  (1) Deep Well fails to pay field service employees for time spent

---

[1] The Court has jurisdiction over Mr. Lawrence's FLSA claims, which raise a federal question, pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over his NMMWA claims pursuant to 28 U.S.C. § 1367.

traveling to and from out-of-town job sites at the beginning and end of job assignments[2] (the "travel time claim");  (2) Deep Well fails to pay field service employees for time spent in mandatory pre-shift safety meetings (the "safety meeting claim");  and (3) Deep Well excludes the Performance Excellence Program ("PEP") bonus paid to eligible field service employees when calculating employees' regular rate of pay (the "PEP bonus claim").[3]  ECF No. 87 at 6.

On October 15, 2024, the Court conditionally certified an FLSA collective consisting of:

> Current and former employees of Sun Energy Services LLC d/b/a Deep Well Services ("Deep Well") who have worked in the United States as a Greenhat, Leadhand, Roughneck, or Snubbing Operator from [*date certain three years prior to date of Notice*] to the present and were not paid for out of town travel, were not paid for the time spent attending pre-shift safety meetings, or who did not have the amount of any quarterly bonus included in the calculation of their regular rate of pay in determining their overtime rate of pay.

ECF No. 40 at 4.  After Notice and Consent forms were distributed to putative collective members, approximately 155 former or current Deep Well employees opted into the collective.  ECF No. 87 at 12;  89 at 2.  Mr. Lawrence now seeks final certification of a collective pursuant to 29 U.S.C. § 216(b), consisting of "[a]ll Greenhat[s], Leadhand[s], Roughneck[s], or Snubbing Operator[s] who worked [for] Deep Well from October 15, 2021 through [the] present."  ECF No. 86-1.[4]  Additionally, Mr. Lawrence seeks certification of a class under Federal Rule of Civil Procedure 23(b)(3), consisting of "[a]ll Greenhat[s], Leadhand[s], Roughneck[s], or Snubbing Operator[s] who worked [for] Deep Well in New Mexico at any point[,]" to assert claims under the NMMWA. *Id*.  Deep Well opposes final certification of the FLSA collective and certification of the state law

---

[2] Deep Well also refers to each new job assignment as a "hitch."  ECF No. 87 at 7.

[3] Because both statutes require overtime to be compensated at a rate of 1.5 times the employee's regular rate of pay, Mr. Lawrence claims that, by excluding the PEP bonus from the regular rate of pay, Deep Well has undercompensated its employees for overtime.

[4] The collective definition Mr. Lawrence proposes for final certification is different from, and substantially broader than, the collective the Court conditionally certified.  Mr. Lawrence does not acknowledge or address the substantially broader collective definition he now proposes for final certification.

class under Rule 23(b)(3). ECF No. 89. The Motion is fully briefed and ripe for resolution. ECF Nos. 87, 89.

## II.      Legal Standard

A lawsuit may only be certified as a class action if the requirements of Federal Rule of Civil Procedure 23 are satisfied. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 124–25 (3d Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). "Class certification is proper only if the district court is satisfied, 'after a rigorous analysis,' that the plaintiffs 'established each element of Rule 23 by a preponderance of the evidence.'" *Id.* at 125 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012)). The analysis proceeds in two steps. *Id.* First, the court must assess whether plaintiff has satisfied the prerequisites of Rule 23(a), and then it must determine whether plaintiff has met the requirements of either Rule 23(b)(1), (2), or (3). *See id.* at 124–25; *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016).

Mr. Lawrence seeks class certification pursuant to Rule 23(b)(3). ECF No. 129. As a threshold condition to Rule 23(b)(3) certification, a plaintiff must establish that the proposed class is "ascertainable," meaning that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 162–63 (3d Cir. 2015) (citing *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Furthermore, Rule 23(b)(3) certification "requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." *Marcus*, 687 F.3d at 591 (quotation omitted). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Huber v. Simon's Agency, Inc.*, 84 F.4th 132,

156 (3d Cir. 2023) (quoting *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019)). "But the presence of individual questions does not *per se* rule out a finding of predominance." *Id.* (internal quotations omitted). "The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 409 (3d Cir. 2015). "[T]here is substantial overlap in the superiority and predominance inquiries." *Kelly v. RealPage Inc.*, 47 F.4th 202, 215 n.11 (3d Cir. 2022).

Final certification of a collective action under the FLSA, by contrast, is warranted when "the proposed collective plaintiffs are 'similarly situated.'" *McDonnell v. KRG Kings LLC*, No. 2:20-cv-01060, 2022 WL 3681672, at *2 (W.D. Pa. Aug. 25, 2022) (Wiegand, J.) (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012)). Similarly situated "means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at *4. As with class certification under Rule 23, the plaintiff has the burden of making this showing by a preponderance of the evidence. *Id.* at *2.

"'To be found similarly situated, members of the collective need not have an identical experience; complete symmetry of job functions is not required for final certification under the FLSA.'" *Rood v. R&R Express, Inc.*, No. 2:17-cv-1223-NR, 2021 WL 3021978, at *6 (W.D. Pa. July 16, 2021) (Ranjan, J.) (quoting *Carr v. Flowers Foods, Inc.*, No. 15-6391, 2019 WL 2027299, at *4 (E.D. Pa. May 7, 2019)). Nor must plaintiffs in an FLSA collective action satisfy the prerequisites of Federal Rule of Civil Procedure 23. *See Zavala*, 691 F.3d at 536 (rejecting "approaches [to final FLSA certification] derived from Rule 23"). Instead, courts in this Circuit apply the so-called "ad hoc" approach to determine whether individuals are similarly situated. *Id.* This approach requires the district court "to consider[] all the relevant factors and make[] a factual

determination on a case-by-case basis." *Id.* According to the Third Circuit, the factors a court should consider include, but are not limited to: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.* at 536–37. Courts should also consider whether "the existence of individualized defenses" renders members of a proposed collective dissimilar. *Id.* at 537 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007)). Some courts also look to "fairness and procedural considerations." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-cv-00085-CB, 2011 WL 6372873, at *9 (W.D. Pa. Dec. 20, 2011) (Bissoon, J.); *see also Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 86 (3d Cir. 2017).

## III. Discussion

The Court will first consider whether certification of the putative class is warranted under Federal Rules of Civil Procedure 23(a) and 23(b)(3) before turning to final certification of the FLSA collective under 29 U.S.C. § 216(b).

> ### A. Class Certification Under Rule 23(a) and 23(b)(3) Is Warranted for the Travel Time Claim and the PEP Bonus Claim, But Not for the Safety Meeting Claim

Mr. Lawrence seeks certification of a putative Rule 23(b)(3) class, consisting of all Greenhats, Leadhands, Roughnecks, or Snubbing Operators who worked in New Mexico for Deep Well "at any point." ECF No. 86–1.[5] Mr. Lawrence argues that Deep Well has applied the three pay practices at issue in this case uniformly to the putative class members and that, therefore, common issues predominate over individual ones such that a class action is the superior method for adjudicating the claims. ECF No. 87 at 15. Deep Well concedes that Mr. Lawrence can satisfy the numerosity and adequacy of representation requirements set forth in Rule 23(a). ECF No. 89

---

[5] Mr. Lawrence's proposed 23(b)(3) class definition does not include any time limitation. *See* ECF No. 86-1.

at 6–7.  However, Deep Well contends that Mr. Lawrence fails to show commonality or typicality under Rule 23(a) and further fails to show predominance and superiority under Rule 23(b)(3).  The Court will first consider whether Mr. Lawrence has shown, with respect to each of the three claims, Rule 23(a)(1) typicality.  The Court will then consider commonality under Rule 23(a) and predominance and superiority under Rule 23(b)(3).  But because Rule 23(b)(3)'s predominance requirement "incorporates" Rule 23(a)'s commonality requirement, and because 23(b)(3) predominance is "far more demanding" than 23(a) commonality, the Court will "analyze the two factors together, with particular focus on the predominance requirement[,]" for each of the three claims.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004).

### 1. Mr. Lawrence Satisfies Rule 23(a) Typicality for Each Claim

Under Rule 23(a)'s typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  This "ensures the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001) (internal citations omitted).  "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (quoting *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).  The Third Circuit has explained that the typicality inquiry addresses "three distinct, though related, concerns:  (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;  (2) the class representative must not be subject to a defense that is both inapplicable

to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (2009).

Here, Deep Well argues that typicality is lacking for each of Mr. Lawrence's three claims, pointing to: the fact that its policy regarding out-of-town travel changed in January 2025; the fact that some employees drove to out-of-town job sites while other employees flew; and the fact that the PEP bonus formula relies on a variety of individualized factors. ECF No. 89 at 16–18. But these distinctions speak more to commonality than typicality. Unlike commonality, "which evaluate[s] the sufficiency of the class itself," *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 267 (E.D. Pa. 2013), typicality asks "whether a [named] plaintiff is markedly different from the class as a whole[.]" *Marcus*, 687 F.3d at 598. Mr. Lawrence alleges that Deep Well failed to pay him and other field service employees for time spent traveling to out-of-town job sites and attending pre-shift safety meetings and failed to include the amount of PEP bonus he and other class members earned when it calculated their regular rate of pay. Deep Well points to nothing that suggests Mr. Lawrence advances different legal or factual theories than other putative class members, or that Mr. Lawrence has different incentives than other putative class members with respect to these alleged pay practices. The Court thus concludes that Mr. Lawrence meets his burden with respect to typicality for each of the three claims.

### 2. Mr. Lawrence Has Shown Commonality under Rule 23(a)[6] and Predominance and Superiority under Rule 23(b)(3) with respect to the Travel Time Claim

Mr. Lawrence argues that common evidence "binds together" each putative class member's theory of Deep Well's liability with respect to the travel time claim. ECF No. 87 at 2. Mr.

---

[6] As stated, the Court will analyze 23(a) commonality and 23(b)(3) predominance simultaneously, "with particular focus on the predominance requirement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528.

Lawrence points to the depositions of Deep Well's corporate representative, who testified that Deep Well does not reimburse field service employees for time spent flying to a job site requiring an overnight stay, and to the depositions of other Deep Well employees who testified to the same. *Id.* at 7–8. Mr. Lawrence also points to a January 2025 email from Deep Well's human resources department announcing that Deep Well will begin compensating employees for time spent driving their personal vehicles to and from jobsites at the beginning and end of a hitch.[7] *Id.*; ECF No. 87-9. In arguing that individual issues predominate over common ones with respect to the travel time claim, Deep Well points to the fact that it "used two different compensation plans relating to . . . travel hours during the relevant lookback period and the pendency of this litigation." ECF No. 89 at 10. Deep Well further argues that the fact that some employees drove to out-of-town job sites while other employees flew further demonstrates the individualized nature of each putative class member's travel time claim. *Id.* at 14–15.

The Court is unpersuaded by Deep Well's arguments regarding the travel time claim. To prove the travel claim at trial, putative class members must establish both that time spent traveling to out-of-town job sites is compensable under the NMMWA, and that Deep Well did pay them for such time. And Deep Well acknowledges that it has treated all putative class members consistently with respect to travel time. Before January 2025, Deep Well did not pay field service employees for any time spent traveling to out-of-town job sites at the start and end of a hitch. *See* ECF No. 87-9. Since January 2025, Deep Well has paid field service employees for time spent driving to and from out-of-town job sites, but not for time spent flying to and from such job sites.[8] Therefore,

---

[7] The January 2025 email clarifies that the "policy change does not apply to employees that utilize airline travel." ECF No. 87-9.

[8] The parties have agreed on the amount of time flying to an out-of-town jobsite typically entails, and have stipulated that, "[f]or out-of-town assignments involving commercial air travel and an overnight stay of one night or more, . . . employees incurred approximately three hours of travel time in each direction[,]" including "approximately two hours at the airport for early arrival, check-in, and security procedures, and approximately one hour for ground transportation between the airport and company-provided lodging (including time for baggage claim and transit)." ECF No. 82 ¶ 2.

"common issues predominate over issues affecting only individual class members" with respect to the travel time claim. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528. Putative class members will differ in how many out-of-town jobs they performed for Deep Well during the lookback period, but differences in the amount of each class member's damages are insufficient to defeat a finding that common issues predominate. *See In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 305–06 (3d Cir. 2005) ("Although the calculation of individual damages is necessarily an individual inquiry, the courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues predominate."); *see also See Troncone v. Velahos*, No. 10-2961, 2013 WL 1222630, at *6 (D.N.J. Mar. 25, 2013) ("The fact that individual class members worked different hours and received a different amount of pay does not preclude a finding that common issues of law and fact predominate over individual ones."). The Court thus concludes that Mr. Lawrence has shown that common issues predominate over individualized ones with respect to the travel time claim.

Turning to superiority of the class action mechanism, any single class member's expected recovery with respect to the travel time claim is likely too meager to incentivize filing an individual action. Furthermore, the Court is not aware of any parallel litigation concerning the Deep Well's failure to pay for travel time. And, given the predominance of common factual and legal issues over individual ones with respect to the travel time claim, the Court is satisfied that concentrating this litigation in a singular forum is prudent and manageable. The Court thus concludes that Mr. Lawrence has also shown that a class action is the superior method for adjudicating the travel time claim. The Court will therefore grant Mr. Lawrence's Motion for Certification of a 23(b)(3) class with respect to the travel time claim.

### 3. Mr. Lawrence Fails to Show Predominance and Superiority under Rule 23(b)(3)[9] with respect to the Safety Meeting Claim

Mr. Lawrence argues that common evidence "binds together" the putative class members' claims regarding the pre-shift safety meetings. ECF No. 87 at 2. Specifically, Mr. Lawrence points to testimony from Deep Well supervisors that pre-shift safety meetings were mandatory and occurred before every shift. *Id.* at 9. Mr. Lawrence also points to testimony from Jordan Thomas, a field service employee, that, "Deep Well did not provide a way for the field service employees to track their time at the job site, before the start of their shift." *Id.* at 5.

But Mr. Lawrence identifies nothing in the record which shows that Deep Well has or had a uniform policy of not paying employees for time spent in pre-shift safety meetings. Mr. Thomas did testify that Deep Well has never provided him with a way to track time worked before the start of a shift. ECF No. 87-7 at 31:13–17. However, other evidence in the record makes clear why this is so—Deep Well pays field service employees an additional two hours of wages for every shift worked. ECF Nos. 87–4 at 22:15–24:1; 87–13 at 23:12–22; 89–2 at 88:2–90:25. Field service and executive employees alike testified that these two hours of additional wages, also known as "shop travel time[,]"[10] compensate employees for any time spent in pre-shift safety meetings, which occur within one hour of the shift start time. *Id*.

In the absence of evidence that Deep Well uniformly fails to pay employees for time spent in pre-shift safety meetings, establishing Deep Well's liability with respect to the safety meeting claim would require individualized evidence regarding: the total hours each class member worked

---

[9] Because the Court concludes that Mr. Lawrence fails to meet the predominance and superiority requirement of Rule 23(b)(3) with respect to the safety meeting claim, it need not consider whether Mr. Lawrence can meet the commonality requirement of Rule 23(a) with respect to the safety meeting claim.

[10] Deep Well's designated corporate representative, David Mulvihill, testified that the term "shop travel time" is merely "semantic" and that, despite the term, the extra two hours of wages field service employees receive are intended to compensate the employees for time spent in pre or post-shift meetings, not for travel. ECF No. 89-2 at 88:6–13.

within all relevant pay periods;  the total hours each class member spent in pre-shift safety meetings within the same pay periods;  and the total amount and hourly rate of wages Deep Well paid each class member within the same pay periods.  "[I]ndividual issues" would thus "overwhelm[] common questions among the class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 187 (3d Cir. 2001).  Individualized damages calculations will not, as noted, typically stand in the way of 23(b)(3) class certification.  *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 (3d Cir. 2015) ("'[r]ecognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal.'") (quoting *Comcast Corp. v. Behrend*, 569 U.S. at 27, 42 (Ginsburg, J. & Breyer, J., dissenting).  However, when "proof of damages is essential to liability, the need for 'individualized proof of economic loss,' instead of through a formulaic calculation, can defeat predominance." *In re Paulsboro Derailment Cases*, 2014 WL 4162790, at *12 (D.N.J. Aug. 20, 2014) (quoting *Newton*, 259 F.3d at 188).  Here, a large volume of individualized evidence would be required to establish Deep Well's *liability* with respect to each putative class member's safety meeting claim.  Thus, allowing the safety meeting claim to proceed as a class action would result in "countless mini-trials" and "present severe manageability problems for the [C]ourt." *Johnston*, 265 F.3d at 194.  Accordingly, Mr. Lawrence fails to show superiority and predominance under Rule 23(b)(3) with respect to the safety meeting claim.  The Court will thus deny the Motion with respect to the safety meeting claim.

4. **Mr. Lawrence Has Shown Commonality under Rule 23(a)[11] and Predominance and Superiority under Rule 23(b)(3) with Respect to the PEP Bonus Claim**

As with the first two causes of action, Mr. Lawrence argues that common evidence "binds together" the putative class members' claims regarding the PEP bonus.  Specifically, Mr.

---

[11] As stated, the Court will analyze 23(a) commonality and 23(b)(3) predominance simultaneously, "with particular focus on the predominance requirement." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 528.

Lawrence points to the deposition of Deep Well's Finance Director, Lisa Herrington, who testified that Deep Well has never included the PEP bonus when calculating the regular rate of pay for *any* of its employees. ECF No. 87 at 9.  Deep Well responds that an employee's entitlement to a quarterly PEP Bonus is based, at least in part, on that employee's compliance with safety protocols that vary by job site.  ECF No. 89 at 16.  Thus, because the reasons why a given employee may receive a PEP bonus will vary, the question of "whether [the PEP] bonus was actually discretionary in a given case – and therefore, whether it should have been included in a putative class member's regular rate of pay calculation[,]" will also vary for each class member.  *Id*. at 17.

The predominant legal issue regarding the PEP bonus claim is whether Deep Well is required to include the bonus in employees' regular rate of pay.   Under the FLSA and its implementing regulations, discretionary bonuses need not be included in an employee's regular rate of pay, while nondiscretionary bonuses must be included.  *See* 29 C.F.R. § 785.39.  But Mr. Lawrence seeks to certify a 23(b)(3) class asserting claims under the NMMWA, not the FLSA, and, to this Court's knowledge, New Mexico state courts have not addressed when a bonus must be included in an employees' regular rate of pay under the NMMWA.[12]

Nevertheless, resolution of this legal question is unlikely to differ across members of the putative class.  Multiple Deep Well employees testified that the PEP bonus program applies to all field service employees.   ECF Nos. 87-13 at 48:5–23, 87-4 at 31:11–17.  The 2019 document

---

[12] While "several New Mexico cases refer to federal law as persuasive authority in interpreting the [NM]MWA," New Mexico Courts will not rely on the FLSA when interpreting the NMMWA when the relevant language in each statute differs. *Segura v. J.W. Drilling, Inc.*, 355 P.3d 845, 848 (Ct. App. N.M. 2015).  Here, the relevant language in the FLSA differs from the relevant language in the NMMWA.  The FLSA requires employers to compensate any overtime hours "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207.  The NMMWA, by contrast, requires employers to compensate overtime hours at "one and one-half times the employee's regular *hourly* rate of pay."  N.M. Stat. Ann. § 50-4-22 (emphasis added).  At this stage, it is not clear to the Court whether New Mexico Courts would rely on the FLSA to determine when, if ever, a bonus must be included in an employee's regular rate of pay under the NMMWA.

12

setting forth the PEP policy clarifies that employees will be "scored" along the same standardized criteria, including equipment maintenance, work performance, safety and quality compliance, and timely entry of timesheets.  ECF No. 89-7 at 1–3.  The document then provides a formula which uses the employee's score in each category to determine the employee's PEP bonus amount.  *Id.* at 3.  Thus, while the amount of each employee's PEP bonus will clearly differ, the bonus program is applied to field service employees in a uniform manner.  Deep Well's legal obligation to include the PEP bonus in calculating the regular rate of pay—to the extent it has such an obligation—is therefore unlikely to be specific to each employee who received a bonus.  In other words, the critical legal question the PEP bonus claim presents likely has an answer that is common to the entire putative class.  Similarly, the critical factual question the PEP bonus claim presents is whether Deep Well included the bonus in calculating employees' regular rate of pay.  As noted, Deep Well's Finance Director has already testified that the answer to that question, for all employees, is no.  ECF No. 89-13 at 18:11–19: 9.  And Deep Well does not challenge the accuracy of that testimony.  The Court therefore concludes that Mr. Lawrence has shown that common issues predominate over individualized ones with respect to the PEP bonus claim.

Further, as with the travel time claim, any individual class member's expected recovery with respect to the PEP bonus claim is likely too small to incentivize filing an individual suit.  Additionally, the Court is not aware of any parallel litigation concerning the PEP bonus claim.  Finally, given the predominance of common factual and legal questions, the Court concludes that concentrating the litigation related to the PEP bonus claim in a singular forum is not only manageable, but desirable.  Mr. Lawrence has thus shown that a class action is a superior method of adjudicating the PEP bonus claim.  Accordingly, the Court will grant Mr. Lawrence's Motion for Certification of a 23(b)(3) class with respect to the PEP bonus claim.

### 5. The Court Will Narrowly Circumscribe the Rule 23(b)(3) Class

As stated, the Court will grant Mr. Lawrence's Motion for Certification of a Rule 23(b)(3) class with respect to the travel time claim and the PEP bonus claim. However, the class definition Mr. Lawrence proposes is overly broad. *See* ECF No. 86-1 (Motion for Certification of a Rule 23(b)(3) class consisting of "[a]ll Greenhat[s], Leadhand[s], Roughneck[s], or Snubbing Operator[s] who worked [for] Deep Well in New Mexico at any point."). Although the NMMWA has a three-year statute of limitations, *see* N.M. Stat. § 37-1-5, the class definition Mr. Lawrence proposes does not include any time constraint. The Court will therefore narrow the class definition. *See Lanning v. Se. Pennsylvania Transp. Auth.*, 176 F.R.D. 132, 148 (E.D. Pa. 1997) ("As a general rule, a class may only include those members whose claims are not barred by the applicable statute of limitations."). The Court will certify the following Rule 23(b)(3) class:[13]

> Current and former employees of Sun Energy Services LLC d/b/a Deep Well Services ("Deep Well") who have worked in New Mexico as a Greenhat, Leadhand, Roughneck, or Snubbing Operator and who, at any point from December 28, 2020[14] through the present who were not paid for travel to and from their homes to out-of-town job sites in New Mexico requiring an overnight stay on behalf of Deep Well, or who did not have the amount of any quarterly bonus included in the calculation of their regular rate of pay in determining their overtime rate of pay.

### 6. The 23(b)(3) Class, as Narrowed, Is Currently and Readily Ascertainable

The Court concludes that the 23(b)(3) class, defined along the foregoing parameters, is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593. Deep

---

[13] To the greatest extent practicable, the Court has endeavored to define the 23(b)(3) class consistently with the FLSA collective the Court conditionally certified. Interestingly, Mr. Lawrence's proposed class action notice, ECF No. 87-21, offers a more constrained class definition than the definition Mr. Lawrence offers in his Motion for Certification, ECF No. 86-1. Deep Well has provided the Court with a redline of Mr. Lawrence's proposed notice, offering two slight clarifications: that the travel time claim only encompasses employees who spent time traveling (1) from their homes, as opposed to from other starting locations, and (2) to out-of-town job sites in New Mexico that required an overnight stay. *See* ECF 89-9. The Court includes Deep Well's proposed limitations in the 23(b)(3) class definition to prevent extraterritorial application of the NMMWA. *See Alvarez v. NES Glob. LLC*, 709 F. Supp. 3d 284, 305 (S.D. Tex. 2023) (NMWA "applies only" to time worked "within the state of New Mexico.").

[14] Mr. Lawrence filed suit on December 28, 2023. Thus, because "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint[,]" *China Agritech v. Michael H. Resh*, 584 U.S. 732 (2018), any claims that accrued prior to December 28, 2020 are time-barred.

Well's records should indicate which employees performed work in New Mexico and which employees received both a PEP bonus and some amount of overtime wages within the same calendar year. *See Sec'y U.S. Dep't of Lab. v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 157 (3d Cir. 2025) (noting that "[a]n employer under the FLSA must make, keep, and preserve records of employees and of the wages, hours, and other conditions and practices of employment."). Thus, this is not a case where "class members are impossible to identify without extensive and individualized fact-finding or mini-trials." *Marcus*, 687 F.3d at 593 (internal quotation marks omitted). The NMMWA 23(b)(3) class, as narrowed by the Court, is thus sufficiently ascertainable.

**B.     Final Certification of the Collective Under 29 U.S.C. § 216(b)**

As noted, final certification of an FLSA collective under 29 U.S.C. § 216(b) is appropriate whenever "the proposed collective plaintiffs are 'similarly situated.'" *Zavala*, 691 F.3d at 536. Furthermore, "[c]ourts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is "considerably less stringent" than the requirements for class certification under Rule 23." *Thomas v. TEKsystems, Inc.*, No. 2:21-CV-460, 2025 WL 756067, at *11 n.4 (W.D. Pa. Mar. 10, 2025) (Stickman, J.). To assess whether members of a collective are similarly situated, courts in this Circuit apply the "ad hoc" approach which considers several non-exhaustive factors. *McDonnell*, 2022 WL 3681672, at *2. Relevant factors include: "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.*

The parties' arguments regarding final certification of the FLSA collective either incorporate or mirror their arguments regarding class certification under Rule 23(b)(3). *See* ECF

Nos. 87 at 13–20, 89 at 18–21.  The Court will not repeat its previous analysis of those arguments, but concludes that Mr. Lawrence has shown, by a preponderance of evidence, that the collective plaintiffs are similarly situated with respect to the travel time claim and the PEP bonus claim such that final certification of the collective with respect to both claims is appropriate.  All members of the collective are former or current Deep Well field service employees.  While field service employees are broken into four different positions, the record makes clear that all four positions perform similar functions.  ECF No. 87-15–87-18.  And, most importantly, all members of the collective challenge the same uniform employer practices—Deep Well's failure to pay for time spent traveling to out-of-town job sites and Deep Well's failure to include the PEP bonus in the regular rate of pay.  *See Zavala*, 691 F.3d at 538 ("Being similarly situated. . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.").  The Court will therefore grant Mr. Lawrence's Motion for final certification of the FLSA collective with respect to the travel time claim and the PEP bonus claim.

However, the Court concludes that Mr. Lawrence has failed to meet his burden under § 216(b) with respect to the safety meeting claim.  Unlike the travel time and PEP bonus claims, Mr. Lawrence has failed to show that Deep Well has maintained a general practice of not paying field service employees for time spent in pre-shift safety meetings.  Therefore, the members of the collective do not challenge a uniform Deep Well practice such that they are commonly situated with respect to the safety meeting claim.  The Court will thus deny Mr. Lawrence's Motion for final certification of the FLSA collective with respect to the safety meeting claim.

As with Mr. Lawrence's proposed Rule 23 class, his proposed FLSA collective is overly broad, and inexplicably is different from the collective the Court conditionally certified.  *See* ECF Nos. 86-1 (Plaintiff's proposed class certification order), 40 (order conditionally certifying FLSA

16

collective).   The Court has therefore worked from the collective definition it conditionally certified, removed the reference to the pre-shift safety meeting claim, and inserted additional language, proposed by Deep Well, limiting the travel time claim to time spent traveling "to and from their homes to an out-of-town job site requiring an overnight stay."   The Court concludes these limitations are warranted, because it is well-established that "normal commute" time "is non-compensable under the FLSA."   *Smith v. Allegheny Techs., Inc.*, 754 F. App'x 136, 140 (3d Cir. 2018).  Accordingly, the Court will finally certify the following FLSA collective:

> Current and former employees of Sun Energy Services LLC d/b/a Deep Well Services ("Deep Well") who have worked in the United States as a Greenhat, Leadhand, Roughneck, or Snubbing Operator from [*date certain three years prior to date of Notic*e] to the present and who were not paid for travel to and from their homes to out-of-town job sites requiring an overnight stay on behalf of Deep Well or who did not have the amount of any quarterly bonus included in the calculation of their regular rate of pay in determining their overtime rate of pay.

## IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Class Certification and for Final Certification on FLSA collective will be GRANTED IN PART and DENIED IN PART as set forth in the accompanying Order.

DATED this 31st day of March, 2026.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

17